UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WILLIAM SIMMONS, DDS,<br><br>*Plaintiff*<br><br>v.<br><br>THE PAUL REVERE LIFE INSURANCE COMPANY, *et al.*<br><br>*Defendants*. | CASE NO.  CV15-807 BJR<br><br>ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT |

## I.  INTRODUCTION

Plaintiff William Simmons, DDS instituted this lawsuit against Defendants The Paul Revere Life Insurance Company ("Paul Revere") and Unum Life Insurance Company of America ("Unum Life") (collectively, "Defendants"), alleging that they wrongfully denied him benefits under a disability insurance policy Simmons purchased from Defendants. Simmons brings three claims: (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, and (3) violation of the Washington Insurance Fair Conduct Act. *See* Dkt. No. 17. Currently before the Court is Simmons' motion for partial summary judgment and Defendants' cross motion for summary judgment. Dkt. Nos. 39 and 42. Having reviewed the motions, the oppositions and replies thereto, the record of the case, and the relevant legal authorities, the

Court will deny Simmons' motion and grant Defendants' cross motion. The reasoning for the Court's decision follows.[1]

## II. BACKGROUND

The following material facts are undisputed unless otherwise noted:

### A. Simmons' Dental Practice

Dr. Simmons, who is currently 67 years old, has a dental practice in the Seattle area. The practice consists of two offices, one in Seattle and one in Bellevue. Dkt. No. 40, Ex. C at 8:12-20; Dkt. No. 43, Ex. D 6:14-25, Ex. C at 8:17-19. Simmons works four days a week from 8:00 a.m. to 5:00 p.m. Dkt. No. 40, Ex. C at 18:11-28. He typically works three days in the Seattle clinic and one day in the Bellevue clinic. Dkt. No. 42, Ex. D 8:22-9:3. His wife, Anna Simmons, manages the dental practice. Dkt. No. 43, Ex C at 7:2-6.

Simmons' practice is a "general dentistry practice," meaning that he performs "typical dental procedures [including] crown, bridge, cleanings, hygiene, operative dentistry, surgery [and orthodontics]." Dkt. No. 43, Ex. D 8:1-17. He also treats patients with craniofacial and temporomandibular ("TMD") pain disorders and sleep apnea. Dkt. No. 40, Ex. C at 8:12-20, Dkt. No. 43, Ex. C at 10:10-24, Ex. D at 7:24-26:11; Ex. E at 139:18-140:14. In November 2008,[2] at least a quarter of Simmons' dental practice was devoted to treating craniofacial pain and he was trying to "grow that component of [his] practice." Dkt. No. 43, Ex. D 11:13-19, 12:3-16; Dkt. No. 52, Dkt. No. 52, Ex. I at 49:5-9.

---

[1] The Court finds that oral argument is unnecessary for the resolution of these motions, and therefore, denies the parties' request for oral argument.

[2] This case centers around an injury Simmons sustained on November 1, 2008.

2

**B. The Disability Insurance Policy**

Simmons obtained a disability insurance policy (the "Policy") from Paul Revere in 1984. Dkt. No. 43, Ex. A. The Policy provides both total disability and residual disability benefits and defines them as follows:

1.10 "Total Disability" means that because of Injury or Sickness:

    a. You are unable to perform the important duties of Your regular occupation; and
    b. You are not engaged in any other gainful occupation; and
    c. You are under the regular and personal care of a Physician.

1.11 "Residual Disability" means that because of Injury or Sickness:

    a. (1) You are unable to perform one or more of the important duties of Your regular occupation; or
       (2) You are unable to perform the important duties of Your regular occupation for more than 80% of the time normally required to perform them; and
    b. You are engaged in Your regular occupation or another occupation and Your Monthly Earnings are reduced to 80% or less of Your Prior Earnings; and
    c. You are under the regular and personal care of a Physician.

Dkt. No. 40, Ex. A ¶¶ 1.10 and 1.11.

Simmons paid extra for a provision entitled "Total Disability in Your Occupation Benefit Rider" (the "Rider"). *Id*. at 25. The Rider deleted the foregoing definition of total disability and replaced it with the following:

"Total Disability" means that because of Injury or Sickness:

    a. You are unable to perform the important duties of Your regular occupation; and
    b. You are under the regular and personal care of a Physician.

*Id*. In other words, the Rider eliminates the "You are not engaged in any other gainful occupation" language from the definition of "Total Disability." The Rider further states that

"[a]ll definitions in Your Policy apply to this rider. All provisions of Your Policy remain the same except where We change them by this rider." *Id*.

In the event of total disability, the policy pays a monthly benefit of $5,000. *Id*. at 3. In the event of residual disability, the policy provides a formula to determine the amount of benefits payable, if any. *Id*. at 8 ¶ 2.2.

### C. Simmons' Disability

Simmons was rear-ended while driving his vehicle on November 1, 2008. Dkt. No. 17, ¶ 2.1. He claims that he injured his right shoulder in the accident. *Id*. at ¶ 2.4. He resumed working the day after the accident; he worked his standard hours and performed his standard procedures. Dkt. No. 43, Ex. C at 18:2-9, 56:16-17, Ex. D at 26:1-12. However, Simmons alleges that at some point after the accident, he began to modify his work schedule due to his injury. *Id*. at Ex. D at 26:1-12. This included incorporating short "rest periods" into his schedule and "making several appointments" for a procedure that, pre-injury, he would have done in just one appointment. *Id*. Nevertheless, he continued to work his standard hours and complete his standard dental duties. *Id*. at Ex. C at 18:2-9, 94:11-22. This continued for two years, until December 1, 2010, when he underwent surgery to repair his right rotator cuff. Dkt. No. 43, Ex. C at 19:7-10. Simmons did not work following the surgery until January 15, 2011 when he returned to work on a part-time basis. Dkt. No. 40, Ex. C at 19:19-20:16. He resumed his four-day-a-week, 8:00 a.m. to 5:00 p.m. schedule in March, 2011. Dkt. No. 43, Ex. C at 20:9-18, Ex. D at 9:18-22, Dkt. No. 40, Ex. C at 33:6-17.

The surgery successfully reduced Simmons' shoulder pain, but he continues to complain that his hand becomes numb after a period of activity where he must brace his right arm to perform certain dental tasks. Dkt. No. 43, Ex. C 55:5-14. After he takes a break for up to ten

4

minutes, he is able to complete the procedure. *Id*. Simmons claims that as a result of this issue, he has had to eliminate the following tasks from his dental practice since his surgery:

- Dental hygiene[3] (Dkt. No. 43, Ex. C at 33:6-11, Dkt. No. 40, Ex. C at 165:4-10);
- Wisdom tooth extractions (Dkt. No. 43, Ex. D at 29:8-12);
- Periodontal surgery (Dkt. No. 43, Ex. E at 118:10-13);
- Denture "set-ups"[4] (Dkt. No. 43, Ex. E at 120:10-14);
- Completing multiple implants during one appointment (Dkt. No. 43, Ex. C48: 2-7);
- Crown and bridge work  (Dkt. No. 43, Ex. D at 125:25-126:4); and
- Fabricating orthotics (*Id*. at 126:8-9).

Simmons is still able to perform the following dental duties:

- All diagnostic dental procedures (Dkt. No. 43, Ex. D at 110:25-111:5);
- Preventative dentistry tasks (other than hygiene) (*Id*. at 112:23-113:2);
- Treat patients for craniofacial and TMD pain disorders (*Id*. at 126:15-18);
- Single implants (Dkt. No. 43, Ex. C at 48:2-7);
- Crown adjustments (*Id*. at 96:1-3);
- Dental fillings (*Id*. at 113:14-25);
- Treat patients for sleep apnea (*Id*. at 139:23-140:5);
- Injections (*Id*. at 127:1-2);
- "Phase II treatments" (with the exception of crown and bridge work)

---

[3] The parties dispute whether Simmons eliminated hygiene from his practice because of his injury or for other reasons.

[4] However, Simmons admits that he "can [still] do dentures", and that the fact that he is now "not doing as much" dentures has "[l]ess to do with [his] injury" and is more to do with "changes in [his] practice" because his "general dentistry side of [his] practice is shrinking." Dkt. No. 43, Ex. E at 122:2-10.

5

(*Id*. at 127:3-4); and

- Orthodontics (Dkt. No. 40, Ex. C at 144:12-19).

There has never been a time in which Simmons was unable to complete a procedure on a patient due to his injury, nor has a patient ever indicated that he or she is dissatisfied with Simmons' work as a result of his injury. Dkt. No. 43, Ex. C at 116: 9-25.

### D. Simmons' Disability Claim

Simmons initiated his disability claim with Paul Revere on May 27, 2013, five years after the car accident. Dkt. No. 43 at Ex. B. On the claim form, Simmons indicated that he is able "to perform all tasks [of his occupation], but slower and require rest periods." Ex. B at 2; Dkt. No. 43, Ex. C at 94:11-22. He further indicated that he is not able to perform "lengthy procedures both clinical and laboratory." Ex. B at 2, Dkt. No. 43, Ex. C at 94:23-95:8.

Paul Revere investigated Simmons' claim and determined that Simmons was residually disabled from November 1, 2008 (the date of the car accident) through December 1, 2010 (the date of his surgery). Dkt. No. 43, Ex. G at 2. It paid Simmons retroactive residual disability benefits for that timeframe. *Id*. In addition, Paul Revere paid retroactive total disability benefits from December 1, 2010 to January 5, 2011—reflecting the time period that Simmons did not work at all after his shoulder surgery. *Id*. Following his post-surgical return to work, Paul Revere again paid Simmons residual disability benefits from January 15, 2011 through March 1, 2011. *Id*. Paul Revere closed Simmons' disability claim effective March 1, 2011 because, according to the insurance company, Simmons was able to perform his job duties and because the financial information Simmons supplied showed he did not have the required loss of income necessary to continue to qualify for residual disability benefits beyond that date. Dkt. No. 43, Ex. H.

Simmons filed the instant lawsuit on May 22, 2015, alleging that he is entitled "to receive residual disability benefits." Dkt. No. 17 at ¶ 2.3; *see also* ¶ 2.5 (alleging that Simmons "submitted an application for residual disability benefits"). Simmons did not allege that he is entitled to total disability benefits. Nevertheless, with his instant motion for partial summary judgment, Simmons now claims that he is entitled to total disability benefits retroactive to 2008 and continuing for the remainder of his life. Defendants disagree and move for summary judgment on Simmons' claims. The motions are now ripe and ready for this Court's review.

### III. LEGAL STANDARD

Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, "there is no genuine dispute as to any material fact." *United States v. JP Morgan Chase Bank Account No. Ending 8215*, 835 F.3d 1159, 1162 (9th Cir. 2016) (quoting Fed. R. Civ. P. 56(a)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute of material fact exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249-50 (1986).

### IV. DISCUSSION

#### A. Simmons Is Not Entitled to Total Disability Benefits

The interpretation of an insurance policy is a question of law for the court. *Cervantes v. Foremost Ins. Co*., 2016 WL 7972905, *2 (E.D. WA. April 19, 2016) (*citing Roller v. Stonewall Ins. Co*., 115 Wn.2d 679, 682 (1990)). Where policy language is clear and unambiguous, the court will enforce the provisions as written. *Pub. Util. Dist. No. 1 v. Int'l Ins. Co*., 124 Wn.2d 789, 797 (1994). However, if a provision is ambiguous, the court must construe it in favor of the insured. *Transcon. Ins. Co. v. Wash. Pub. Util. Dists' Util. Sys*., 111 Wn.2d 452, 456-57 (1988).

7

A provision is ambiguous if it is susceptible to more than one reasonable interpretation. *Id*. at 457.

Important here, Washington law mandates that insurance policies be construed as a whole and every term given effect. *Cervantes*, 2016 WL 7972905, *2 (*citing Overton v. Consol. Ins. Co.*, 145 Wn.2d 417, 424 (2002)); *Patriot General Ins. v. Gutierrez*, 186 Wn. App. 103, 110 (2015). No term should be disregarded or ignored as mere surplusage. *See Dupree v. Holman Prof'l Counseling Ctrs.*, 572 F.3d 1094, 1097 (9th Cir. 2009) (court interpreting policy should "construe each provision in a manner consistent with the whole such that none is rendered nugatory'); *Boeing v. Aetna*, 113 Wn.2d 869, 881 (2011) ("The court cannot ignore the operative language of the clause itself."); *Gull Industries v. State Farm*, 181 Wn. App. 463, 470 (2014) (courts should examine the entire policy to determine the meaning of a particular term).

This dispute turns on the definition of "total disability" as the term is used in the Policy. The parties agree that the definition set forth in the Rider controls. In other words, Simmons is totally disabled for purposes of the Policy if, because of his shoulder injury, he is "unable to perform the important duties of [his] regular occupation" and he is "under regular and personal care of a [p]hysician." Dkt. No. 40, Ex. A at 7. However, the Rider does not define what is meant by "*the* important duties." Therein lies the rub.

Simmons argues that "the important duties" means that he must be able to perform *all* of the important duties of dentistry; if he cannot perform even just one of the important duties, he is totally disabled. Dkt. No. 49 at 1 ("Dr. Simmons has never claimed to be an invalid or helpless; rather, that he cannot do all of the important duties of his occupation."). He claims that because he has "abandoned at least three (3) elements of his dental practice and dramatically scaled down

8

many other areas," he "meets the standard required in the Rider's definition of total disability." *Id.*

The Defendants disagree. They argue that the Rider's definition of total disability must be read in conjunction with the residual disability provision in the Policy. As discussed, *supra*, that provision provides that an insured is residually disabled if he is unable to perform "one or more" of the important duties in his occupation or he is unable to perform those duties for "more than 80% of the time normally required to perform them." Dkt. No. 40, Ex. A at 7. Defendants argue that, read in conjunction with the residual disability provision, the Rider's definition of total disability must mean that an insured is totally disabled only if he cannot perform *any* of the important duties of his occupation. Defendants argue that interpreting the Rider to allow a finding of total disability when the insured is still able to perform at least some of his important duties would render the residual disability provision meaningless.

As stated above, Washington law requires this Court to construe the Policy as a whole. *See e.g. Gutierrez*, 186 Wn. App. At 110; *Gull Industries*, 181 Wn. App. at 470. Following this mandate, the Court concludes that the Rider's definition of total disability must be read in conjunction with the residual disability provision. The Court further concludes that when these provisions are read together, the meaning of the word "the" as it is used in the total disability definition becomes clear: in order to be considered totally disabled, Simmons must be unable to perform *any* of the important duties of his occupation; on the other hand, Simmons is residually disabled if he is not able to perform *at least one* but can perform *at least some* of his important duties (assuming he can meet the other requirements for residual disability).

Not only does reading the provisions in conjunction remove any ambiguity regarding how many of the important duties Simmons must be unable to perform in order to qualify as

9

totally disabled, but interpreting the Rider's total disability provision as requiring that Simmons must be unable to perform any of his important dental duties in order to be eligible for total disability benefits is the only way the residual disability provision remains meaningful in the context of the Policy (as required by Washington contract law). If this Court were to adopt Simmons' interpretation of the Rider's definition of total disability (*i.e.*, that an insured is totally disabled if he is unable to perform even just one of the important duties of his occupation), then it would be impossible for an insured to ever qualify for residual disability because any amount of disability would satisfy the criteria for total disability.

This Court's interpretation of the residual and total disability provisions in the Policy at hand is consistent with the decisions of other courts that have been asked to interpret similar policy language. *See*, *e.g.*, *Helus v. Equitable Life Ass.*, 309 F. Supp. 2d 1170, 1179 (N.D. Cal. 2004) ("[T]he plain meaning of [the total disability provision] when read together with the residual disability provision, is the inability to perform *all* of the duties.")(emphasis in original); *Massachusetts Mut. v. Bussell*, 2008 WL 4820771 at *8 (C.D. Cal. Nov. 3, 2008) ("An insured is not totally disabled if she is physically and mentally capable of performing some, but not all, of her work connected with her employment, and is not entitled to total disability benefits merely because she is rendered unable to transact one or more of the duties connected with her business."); *Dym v. Provident Life and Acc. Ins. Co.*, 19 F. Supp. 2d at 1150 (S.D. Cal. 1998) (reading the definition of total disability in conjunction with the definition of residual disability in analyzing the definition of "total disability"); *Canu v. National Life Ins. Co.*, 2013 WL 1883534, at *6 (E.D. Mich. May 6, 2013) ("When total and residual disability are read together in an insurance policy such as the one here, total disability requires that the insured be unable to perform all of his significant duties of his occupation. Any other interpretation would render the

policies' residual disability provisions nugatory.") (emphasis in original) (citations omitted); *Hershman v. Unumprovident Corp.*, 660 F. Supp. 2d 527, 532 (S.D.N.Y. 2009) (quoting Simon v. Unum Group, 2009 WL 857635, at *5 (S.D.N.Y. Mar. 30, 2009)) ("If the residual disability provision is to be given any meaning, an insured can only be 'totally disabled' if he can no longer perform *any* of the 'substantial and material' duties of his occupation. An inability to perform one or more of those duties would only render an insured residually disabled.") (emphasis in original).

Simmons raises several arguments against this interpretation of the Policy. First, he argues that because the Policy does not identify "what percentage of 'the' duties the insured must be unable to perform" to be eligible for total disability benefits, the Court should find the provision ambiguous. Dkt. No. 49 at 4. As stated above, this Court does not agree that the definition is ambiguous when read in context with the entire Policy. Next, Simmons argues that inserting the word "all" into the definition of total disability violates Washington law, which requires a court to construe a policy in the manner that maximizes coverage for the insured. *Id.* at 3. This argument is misplaced as the obligation to construe a policy in favor of the insured only applies in the event that an insurance policy is ambiguous. *See Transcon. Ins. Co.*, 111 Wn.2d at 457.

Next, Simmons argues that the reason he decided to purchase the Rider was because he wanted to eliminate the "limiting language" in the Policy's original definition of total disability. Dkt. No. 39 at 13. Specifically, the Rider eliminated the following language from the original definition: "You are not engaged in any *other* gainful occupation." *Id.* at 12 (emphasis added). Simmons argues that eliminating this language removed any limitation on his ability to continue to "work[] in dentistry in a modified fashion" and still collect total disability benefits. *Id.* at 13.

11

Simmons is mistaken. That language precluded him from collecting total disability benefits if he was gainfully employed in an occupation *other than* dentistry. Dkt. No. 40, Ex. A at 7. In other words, prior to the deletion of that language, Simmons would have been barred from recovering total disability payments if he was unable to perform any of his dental duties, but was gainfully employed as a chef. With the elimination of this language, he would now be free to seek gainful employment in a different occupation and still be eligible for total disability benefits.

Simmons cites to *Leonor v. Provident Life and Acc. Co.*, 18 F. Supp. 3d 863 (E.D. Mich. 2014) in support of his interpretation of the Rider's definition of total disability. In that case, the district court interpreted a total disability provisions identical to the one in this case and concluded that the language was ambiguous. *Id*. at 876. The *Leonor* court further concluded that "reading the 'Total Disability' and 'Residual Disability' provisions together" did not nullify the residual disability provision; rather, it "creates a continuum of disability." *Id*. (citing *Oliver v. Nat'l Life Ins. Co.*, 2011 WL 5904651 at *7 (E.D. Mich. Nov. 22, 2011)). This Court respectfully disagrees with the *Leonor* court and finds that it has read an ambiguity into a contract where none exists. Moreover, the situation in *Leonor* is very different from the one at hand. In *Leonor*, there was no dispute that the dentist was unable to practice dentistry after his injury. The only dispute was whether he was totally disabled because he could continue to manage his dental practice. Here, it is undisputed that Simmons is still able to perform many of the important duties of his occupation: he was a successful dentist before his injury and remains a successful dentist after his injury. There is far too much continuity between his practice before the injury and his practice after the injury to be considered totally disabled as the term is defined in the Rider.

The other cases on which Simmons relies are also distinguishable from the instant case. For instance, Simmons relies on *Merrill v. Crown Life Ins. Co*., 22 F. Supp. 3d 1137 (E.D. Wa. 2014) to argue that this Court should not consider whether he is able to perform some of his important duties in determining whether he is totally disabled within the meaning of the Policy. *Merrill* is not relevant to the case at hand because it did not involve an analysis of the interplay between the total disability and residual disability provisions in a policy. Indeed, the insurer in *Merrill* conceded that the plaintiff in that case was totally disabled due to his injury. *Id*. at 1146. The dispute in *Merrill* was whether the insurer owed the insured benefits during a period of time when the insured attempted (unsuccessfully) to continue to work. *Id*. The court determined that the insurer was required to pay the benefits. *Id*.

Another case relied on by Simmons, *Scapa v. Provident Life & Accident Co*., 108 Wn.App. 1017, 2001 WL 1085514 (Wash.App. Sept. 17, 2001), is also distinguishable. That case involved a podiatrist who arguably had two professions: one practicing podiatry and the other as a clinic administrator. *Id*. at *6. The podiatrist developed a thoracic condition and cervical radiculopathy and was unable to perform his podiatrist duties as a result. *Id*. The dispute in the case did not center on whether the podiatrist was totally disabled because he could not perform some of his podiatry duties; rather, the dispute concerned whether the podiatrist was engaged in a second occupation (*i.e*., as a clinic administrator) during the onset of his disability. The court concluded that a question of fact existed in this regard and therefore determined that summary judgment in favor of the insurer was inappropriate. *Id*. There is no allegation in the present case that Simmons had a second occupation at the time of his injury.

Simmons' claim for total disability benefits fails for the additional reason that he is not under the "regular and personal care of a physician," another criteria for eligibility. Defendants

13

produced evidence that Simmons has not seen his surgeon since 2010. *See* Dkt. No. 45, Ex. 1 at 13. Defendants presented further evidence to establish that Simmons is not currently under the care of any physician for his shoulder injury. *Id*. Simmons did not offer contrary evidence. Therefore, this Court considers the issue undisputed for purposes of this motion. *See Heinemann,* 731 F.3d at 916-917.[5]

### B. Simmons Failed to Establish that He Is Entitled to Residual Disability Benefits

Defendants also move for summary judgment on Simmons' claim for residual disability benefits, arguing that Simmons is employed full time and that he failed to demonstrate a loss of income of greater than 20% since March 1, 2011 (as is required under the residual disability provision). Simmons did not respond to nor oppose this argument. When opposing summary judgment, the non-moving party must present evidence that demonstrates that a genuine issue of material fact exists. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001); *see also*, *Heinemann*, 731 F.3d at 916-17 (while summary judgment may not be had by default, the failure to respond to a fact asserted permits the court to consider the fact undisputed for purposes of the motion). Given Simmons' failure to oppose this portion of Defendants' motion for summary judgment, his claim for residual disability benefits must be dismissed.

### C. Simmons' Bad Faith and IFCA Claims Must Be Dismissed

Simmons also brings a common law bad faith claim and a claim under the Insurance Fair Conduct Act ("IFCA"). An insurer acts in bad faith when it takes a position that is frivolous or

---

[5] Simmons cites to extrinsic evidence in an attempt to bolster his argument. Under Washington law, a court interpreting an insurance policy does not resort to extrinsic evidence unless the policy is ambiguous on its face. *See*, *e.g*., *Polygon Northwest Co., LLC v. Steadfast Ins. Co*., 682 F. Supp. 2d 1231, 1233 (W.D. Wa. 2009). Given that this Court has concluded that the Policy is not ambiguous on its face, it would be inappropriate for the Court to review the extrinsic evidence cited by Simmons.

14

unfounded. *Mutual of Enumclaw Ins. Co. v. Dan Paulson Constr., Inc*., 161 Wn.2d 903, 916 (2007) (to establish bad faith, an insured is required to demonstrate that the insurer's action was unreasonable, frivolous, or unfounded). Likewise, there is no cause of action under IFCA for violations of insurance regulations absent an unreasonable denial of insurance coverage or benefits. *See Seaway Properties, LLC v. Fireman's Fund Ins. Co*., 16 F. Supp. 3d 1240, 1255 (W.D. Wa. 2014); *Perez-Crisantos v. State Farm*, 187 Wn.2d 669, 677 (2017). This Court has determined that Simmons is not entitled to total or residual disability benefits; therefore, there is no basis for Simmons' bad faith and/or IFCA claims. These claims must be dismissed.

## IV. CONCLUSION

Based on the foregoing reasons, the Court HEREBY DENIES Simmons' motion for partial summary judgment and GRANTS Defendants' motion for summary judgment. The claims against both Defendants are DISMISSED.

Dated this 25th day of January, 2018.

Barbara Jacobs Rothstein
U.S. District Court Judge